GENERAL HARTFORD, INC., ET AL. *v.* TAX COMMISSIONER
OF THE STATE OF CONNECTICUT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 4—decision released July 3, 1979

*Richard C. Robinson,* with whom, on the brief, was *Lee L. Bennett,* for the appellants (plaintiffs).

*Robert L. Klein,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the appellee (defendant).

PER CURIAM. The facts in this appeal are not in dispute. The plaintiffs are construction companies which in the course of their business obtained certain short term construction loans from various lending institutions in order to pay their general and subcontractors. The defendant tax commissioner assessed deficiencies against the companies as the result of their failure to include the amounts of the above loans in the computation of their franchise tax returns for certain years between 1969 and 1972. The plaintiffs appealed the tax commissioner's decision to the Court of Common Pleas, contending that these short term construction loans were similar to "trade accounts payable" and were therefore excludable from the computation of their tax base pursuant to the provisions of § 12-219, as

that section read during the taxable years in question.[1] The trial court dismissed the plaintiffs' appeal, from which dismissal the plaintiffs have appealed to this court.

The only issue on this appeal, as it was in the trial court, is whether the short term construction loans obtained by the corporate plaintiffs for the purpose of making payments to their contractors can be classified as "trade accounts payable" and are thus excludable from the computation of the companies' minimum tax base under the then provisions of § 12-219.

In its broadest usage the term "accounts payable" includes virtually all unpaid bills of whatever nature, denoting the liabilities arising from the purchase of goods or services on credit. In the case law the term has been defined as the "contract obligations owing by a person on open account." *West Virginia Pulp & Paper Co.* v. *Karnes,* 137 Va. 714, 722, 120 S.E. 321 (1923); *State Tax Commission* v. *Shattuck,* 44 Ariz. 379, 398, 38 P.2d 631

---

[1] Under General Statutes § 12-219 (1) (A) (a), as it existed during the taxable years in question, a tax was imposed on the amount derived "by adding (i) the average par or face value, computed on balances at the beginning and end of the taxable year or period, of all indebtedness incurred by or assumed by such company . . . *but excluding trade accounts payable, which trade accounts are outstanding for a period of less than twelve months* . . . (ii) the average value of the issued and outstanding capital stock . . . computed on the balances at the beginning and end of the taxable year or period . . . (iii) the average value of all surplus reserves, deferred profits and unrealized profits computed on the balances at the beginning and end of the taxable year or period . . ." and then (b) "by subtracting from the sum so calculated (i) the average value of any deficit carried on the balance sheet computed on the balances at the beginning and end of the taxable year or period, and (ii) the average value of any holdings of stock of private corporations . . ." and (c) "by apportioning the remainder so derived between . . . [Connecticut] and other states under the provisions of section 12-220a." (Emphasis added.)

(1934). The term "trade accounts payable," on the other hand, is limited to the liabilities created by the purchase of merchandise, supplies or services used in the carrying on of one's trade or business. Trade accounts payable, as that term is generally understood, refers to the amounts owing to trade creditors on account—amounts usually payable within thirty days and which do not generally call for the payment of interest. See Wixon, Kell & Bedford, Accountants' Handbook § 20-5 (5th Ed. 1970).

The plaintiffs are apparently contending that short term bank loans can be considered "trade accounts payable" under the statute because the proceeds from those loans were used to pay off trade creditors. The trial court rejected this contention, stating that even "if it might be assumed that the General Assembly would have so enlarged the definition [of trade accounts payable to include short term loans used to pay such accounts] had it contemplated such a situation as is here presented, it is not our province or privilege to supply the omission by inference or judicial construction." *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 150, 187 A. 895 (1936); *Murphy* v. *Way,* 107 Conn. 633, 639, 141 A. 858 (1928).

We note that "[i]t is a settled rule of law that statutes which exempt from taxation are to be strictly construed against the party claiming an exemption." *Hartford Hospital* v. *Board of Tax Review,* 158 Conn. 138, 147, 256 A.2d 234 (1969); *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 71, 363 A.2d 1045 (1976).

We find no error in the trial court's interpretation of the relevant law or in its conclusion that,

since the legislature used the precise term "trade accounts payable," it must be assumed that the legislature intended to exclude only that obligation in that form and not its claimed equivalent or an amount owed in substitution thereof.

There is no error.